IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-00317-RBJ

BRETT ALAN HANSON,
ROSMA LYNN WALKER, and
THE ESTATE OF DOROTHY EVELYN FELT,

    Plaintiffs,

v.

LARIMER COUNTY BOARD OF COUNTY COMMISSIONERS, acting by and through the
Office of the Larimer County Sheriff;
DEPUTY ETHAN POWERS, in his individual and his official capacity;
DEPUTY NEIL BAKER, in his individual and his official capacity;

    Defendants.

---

ORDER ON DEFENDANTS' MOTION TO DISMISS

---

This case is before the Court on defendants' motion to dismiss. ECF No. 40. For the following reasons the motion is GRANTED in part and DENIED in part.

## I. FACTUAL BACKGROUND

The following facts are derived from the second amended complaint and are assumed to be true solely for the purposes of this order. The plaintiffs are Brett Alan Hanson, Rosma Lynn Walker, and Dorothy Evelyn Felt, who is now represented by her estate. Plaintiffs were at home on the evening of January 8, 2019 when Deputies Powers and Baker ("individual defendants") fired shots into plaintiffs' home. As a result, plaintiffs sue both individual defendants as well as the Larimer County Board of County Commissioners ("the Board"). Plaintiffs have filed the

1

following claims: (1) criminal trespass against both individual defendants; (2) reckless endangerment against defendant Powers; (3) a Section 1983 excessive force claim against defendant Powers; (4) and a Section 1983 false arrest claim against all defendants. With respect to the latter claim, plaintiffs sue the Board under a *Monell* theory of liability.

On January 8, 2019 Mr. Hanson was in the backyard of his Berthoud, Colorado home—where he lived with the other two plaintiffs—yelling about President Trump's immigration policies. ECF No. 37 at ¶4. Mr. Hanson's neighbors heard the commotion and filed a noise complaint with police at 5:46 pm. *Id*. at ¶4. Deputies Baker and Powers arrived at plaintiffs' home at 6:11 pm. *Id*. at ¶6. When they arrived at plaintiffs' home it was dark outside, the entry gate was closed, and all plaintiffs were inside their home. Most notably, Mr. Hanson was no longer outside making any noise at the time of their arrival. *Id*. at ¶9.

Notwithstanding this, Deputies Powers and Baker climbed over the four-foot fence and walked almost two hundred feet to plaintiffs' home. *Id*. at ¶11. The plaintiffs' dogs heard the deputies and began barking. *Id*. at ¶12. Rather than going to the front door to knock and announce their presence, the deputies instead went to the back of the house. *Id*. at ¶14, 15. Mr. Hanson heard his dogs barking, looked out of the back window, and thought he saw intruders. *Id*. at ¶16. Mr. Hanson opened the door and yelled out to the supposed intruders to identify themselves. Neither deputy did so. *Id*. at ¶¶17, 18.

Rather than identify himself, deputy Powers—believing that Mr. Hanson held a pistol—drew his service revolver and fired five times at Mr. Hanson, who stood in the doorway. *Id*. at ¶19. While all five bullets missed Mr. Hanson, they went into the plaintiffs' home where both Ms. Walker and Ms. Felt were present. *Id*. at ¶20. In response to the gunshots, Mr. Hanson

2

ducked behind a freezer on his porch, and then ran back into his bedroom to hide. *Id*. As a result of Deputy Powers' firing his gun, numerous deputies and the Larimer County Sheriff's Office arrived on scene. A SWAT team was also called to the property. *Id*. at ¶22.

Ms. Walker went outside after hearing the disturbance and saw Deputy Baker, who only then identified himself as a deputy sheriff. *Id*. at ¶¶23, 24. Deputy Baker informed Ms. Walker that he had been to their home several years before, and he told her to go back inside. *Id*. at ¶25. Mr. Hanson eventually came out of his bedroom and accused Deputy Baker and Deputy Powers of trespassing. He also asked if they had shot at him. The deputies told Mr. Hanson to come with the deputies, but he declined and told Ms. Walker that he would not accompany the deputies who shot at him. *Id*. at ¶¶26, 27. He then went back inside.

A member of the SWAT team told Ms. Walker that Mr. Hanson needed to come out of the house. Ms. Walker responded that Mr. Hanson was scared to come outside because he had just been shot at multiple times. Mr. Hanson eventually came outside and immediately got on his hands and knees on the house's concrete patio. Two deputies then approached Mr. Hanson and shoved him face down onto the concrete patio where they searched and handcuffed him. *Id*. at ¶32. The officers subsequently arrested Mr. Hanson and took him to the sheriff's office.

While at the sheriff's office, officers interrogated Mr. Hanson. *Id*. at ¶¶4, 39. During the interrogation Mr. Hanson requested an attorney and asked whether he was under arrest. He also asked why he was being detained. *Id*. Corporal Andrew Weber, an officer on scene at the station, stated that he too was trying to determine the answers to those precise questions. *Id*. at 4, ¶40. Deputies eventually informed Mr. Hanson that he was not free to leave, and that he was under arrest for felony menacing and second-degree assault on a police officer. *Id*. at 4, ¶42.

Those charges were never filed against Mr. Hanson. *Id*. at 4, ¶43. However, Mr. Hanson was eventually charged with prohibited use of a weapon and failure to leave the premises or property when ordered by a police officer. *Id*. at 5, ¶44. However, the district attorney dismissed both charges. *Id*. at 5, ¶45. Mr. Hanson was also never charged with any noise ordinance violation, the original alleged crime for which police were called to the scene.

## II. PROCEDURAL BACKGROUND

Plaintiffs initially filed this case in state court, and defendants removed it on February 2, 2020. ECF No. 1. Plaintiffs filed the operative complaint on August 3, 2020. ECF No. 37. On August 17, 2020 defendants filed a motion to dismiss for failure to state a claim. ECF No. 40. Plaintiffs filed their response on September 4, 2020, and defendants filed their reply on September 18, 2020. ECF Nos. 42, 43. The matter is ripe for review.

## III. STANDARD OF REVIEW

Because defendants assert facts outside the four corners of the complaint, plaintiffs ask the Court to convert this motion to one for summary judgment. Most of defendants' asserted facts contradict those asserted by plaintiffs. The weighing of conflicting versions of events involves the type of credibility determinations that our judicial system leaves to the jury. *See Allen v. Wal–Mart Stores, Inc.*, 241 F.3d 1293, 1297 (10th Cir. 2001). Therefore, instead of converting this motion into one for summary judgment on an underdeveloped record—which would also require me to inform the parties and permit them to submit additional evidence—I focus on the four corners of the complaint and apply the typical 12(b)(6) standard.

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pled allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true. *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## IV. ANALYSIS

Defendants move to dismiss all of plaintiffs' claims. First, they argue that no constitutional violation occurred as to either of plaintiffs' Section 1983 claims. Second, they argue even if a violation did occur, deputies Powers and Baker are entitled to qualified immunity. Third, they argue that plaintiffs' *Monell* claim against the Board must fail because there is no direct causal link between the alleged constitutional violation and the supposed policy or custom that caused the violation. Fourth, defendants argue that this Court does not have jurisdiction to hear plaintiffs' state law claims. I address each of defendants' arguments in turn.

**A. Whether plaintiffs' Section 1983 claims are plausible**

Section 1983 of Title 42 of the United States Code provides

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5

Section 1983 "is not itself a source of substantive rights," rather, it provides individuals with "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979). Thus, when bringing a claim under Section 1983 a plaintiff must "identify the specific constitutional right allegedly infringed." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Here, both of plaintiffs' Section 1983 claims derive from the Fourth Amendment. First, plaintiffs allege that officers used excessive force in violation of Mr. Hanson's Fourth Amendment right to be free from an unreasonable seizure. Second, plaintiffs allege that officers violated Mr. Hanson's Fourth Amendment rights when they arrested him without probable cause.

1. <u>Excessive Force in Violation of the Fourth Amendment</u>

Plaintiffs bring their excessive force claim against Defendant Powers in his individual capacity. ECF No. 37 at 7. Plaintiffs argue that Powers violated Mr. Hanson's constitutional right to be free from unreasonable seizure when he fired shots at him outside of his home. Defendants contend that plaintiffs' excessive force claim must fail because the facts, as alleged by plaintiffs, show that no seizure occurred. ECF No. 40 at 6. They argue that Deputy Powers never seized Mr. Hanson because he did not shoot Mr. Hanson when he discharged his firearm, and Mr. Hanson never submitted to his authority. *Id*. at 5. Plaintiffs argue that the Court should look at the entire police encounter holistically, rather than as isolated incidents as defendants urge. ECF No. 42 at 2. However, the Court is bound by the facts that plaintiffs allege.

The Fourth Amendment protects individuals from unreasonable seizure and includes the right to be free from excessive force during an arrest. *Graham*, 490 U.S. at 393–94. To determine whether a Fourth Amendment violation occurred the Court must therefore determine (1) whether a seizure occurred, and (2) whether the seizure was unreasonable.

6

Not every police-citizen encounter is a seizure. Instead, a seizure "triggering Fourth Amendment Protections occurs only when the officer has, by means of physical force or show of authority . . . in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). In *United States v. Mendenhall,* the Supreme Court clarified that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. 544, 554 (1980). Finally in *California v. Hodari D.*, the Supreme Court further clarified the standard when it held

> To constitute a seizure of the person, just as to constitute an arrest—the quintessential "seizure of the person" under Fourth Amendment jurisprudence—there must be *either* the application of physical force, however slight, *or,* where that is absent, submission to an officer's "show of authority" to restrain the subject's liberty.

499 U.S. 621, 626 (1991). Thus, an officer's attempting to seize a person is insufficient to constitute a seizure. Instead, there must be either a physical touching by the officer or a submission to the officer's show of authority. *Id*.

In the absence of a physical touching by the officer, therefore, plaintiffs must allege facts to show Mr. Hanson submitted to Deputy Powers' show of authority. Courts have repeatedly found that a person who flees, even if stopping momentarily in response to a show of authority, has not been seized for the purposes of the Fourth Amendment. As Justice Scalia once said, "[t]he word seizure . . . does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure." *Hodari D.*, 499 U.S. at 626. It is undisputed that Deputy Powers displayed his authority when he discharged his firearm. Further, it is well established that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v.*

7

*Garner*, 471 U.S. 1, 7 (1985).  However, because Deputy Powers' bullets did not hit Mr. Hanson, there was no resultant apprehension.  I therefore must determine whether a seizure occurs when an officer shoots his firearm at or near a suspect, but no bullet contacts the individual.

In *Farrell v. Montoya*, a police officer shot at a fleeing vehicle.  The shots, however, did not slow the vehicle down or bring it to a halt.  The Tenth Circuit held that no seizure occurred because the vehicle continued to move despite its having been shot at.  878 F.3d 933, 934 (10th Cir. 2017).  In *Torres v. Madrid*, the Tenth Circuit applied its reasoning in *Farrell* and held that an individual, who although shot by officers, evaded capture and continued to flee was not seized for the purposes of the Fourth Amendment.  769 F. App'x 654 (10th Cir.) (unpublished), *cert. granted,* 140 S. Ct. 680 (2019), and *vacated and remanded,* 141 S. Ct. 989 (2021).  In 2021 the Supreme Court overturned the Tenth Circuit's holding in *Torres* and in doing so reiterated that seizures require *either* a physical touching *or* a submission to authority.  *Torres v. Madrid*, 141 S. Ct. 989 (2021).  Because the officer in *Torres* did in fact shoot the individual, the Supreme Court held that a seizure occurred notwithstanding the suspect's ultimate escape.  Reading these cases together, I conclude that a seizure occurs when (1) the suspect submits to an officer's discharging their firearm, or (2) the fleeing individual is actually shot, regardless of whether they continue to flee.

Here, Deputy Powers did not contact Mr. Hanson when he discharged his firearm five times.  There was thus no physical touching.  Additionally, the officers' showing of authority— discharging his gun—did not cause Mr. Hanson to submit.  Instead, Mr. Hanson momentarily ducked behind a freezer, and then ran inside to hide.  It is well established that "to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for

there is no seizure without actual submission." *United States v. Salazar*, 609 F.3d 1059, 1066 (citing *United States. v. Baldwin*, 496 F.3d 215, 218 (2d. Cir. 2007)). While Deputy Powers' conduct, as alleged by plaintiffs, was undoubtedly reckless and foolish, I agree with defendants that, as the law currently stands, no seizure occurred when he discharged his firearm. There was simply no physical touching nor submission to authority. Defendants' motion is thus GRANTED as to plaintiffs' excessive force claim.

    2. False Arrest in Violation of the Fourth Amendment

Defendants next move to dismiss plaintiffs' Section 1983 false arrest claim. When a warrantless arrest is the subject of a Section 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest. *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007). Probable cause depends upon "the reasonable conclusion to be drawn from the facts known to an arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Probable cause exists if "facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City & Cnty. Of Denver*, 854 F2d 1206, 1210 (10th Cir. 1988)).

Here, plaintiffs contend that defendants violated Mr. Hanson's constitutional right to be free from an unreasonable seizure when they arrested him without probable cause. Defendants contend that they had probable cause to arrest Mr. Hanson for (1) felony menacing, and (2) misdemeanor obstruction of a peace officer.

9

The non-conclusory facts alleged in the complaint, which the Court must accept as true at this stage of litigation, indicate that Deputies Powers and Baker were called to plaintiffs' house in response to a noise violation. When they arrived, the officers heard no noise emanating from either outside or inside the home. Notwithstanding that, they climbed over plaintiffs' fence and walked two hundred feet to his house. Rather than knocking on the front door and announcing themselves, they went to the back of plaintiffs' home. Thinking there were intruders on his property, Mr. Hanson asked whoever was there to identify themselves. The deputies said nothing. Deputy Powers believed he saw Mr. Hanson holding a gun when he exited his home. Rather than identifying himself as a law enforcement officer, or ordering Mr. Hanson to drop the supposed weapon, Deputy Powers began shooting—he shot his gun five times.

Defendants contend that the above facts give rise to probable cause for felony menacing. I disagree. First, defendants ask this Court to accept as true facts that are not in the complaint, i.e., that Mr. Hanson was brandishing a gun at officers. The Court will not do so. Second, Mr. Hanson was at *his* home and thought that intruders—who never once identified themselves as police officers—were on his property. Even assuming *arguendo* that Mr. Hanson had a gun, it is not a crime in the State of Colorado to hold a gun on your property, or to protect your home from intruders. As the Colorado Constitution says, "[t]he right of no person to keep and bear arms in defense of his home, person, and property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons." Colo. Const. art. II, § 13. The Court thus finds, construing all inferences in favor of plaintiffs as it is required to do, that defendants did not have probable cause to arrest Mr. Hanson for felony menacing.

Defendants next contend that officers had probable cause to arrest Mr. Hanson for misdemeanor obstruction of a police officer. Again, assuming all of the facts in the complaint are true, I cannot agree. According to the complaint, Mr. Hanson retreated from officers—who he did not know were officers—after being shot at multiple times on his porch. The officers then demanded that he come outside. Mr. Hanson was hesitant to come out because, in response to a noise violation, he had been shot at five times. He eventually came to the front door and asked Deputies Powers and Baker if they were the ones who shot at him. Mr. Hanson did not immediately follow the officers' orders because he was panicked and scared as a result of just being unexpectedly shot at five times. He went outside a few moments after getting clarity on the (1) the officers' identities, and (2) who had shot at him. Once outside, the officers threw him to the ground and arrested him.

The Court does not find that this gave defendants probable cause to arrest Mr. Hanson for misdemeanor obstruction of a peace officer. A reasonably prudent person or officer would not believe that Mr. Hanson was attempting to obstruct peace officers because he went inside and hid in response to being shot at multiple times on his own front porch by unknown intruders on his property. Additionally, the fact that Mr. Hanson did not immediately succumb to police officer demands does not indicate he had an intent to obstruct—it indicates that he feared for his life because the same officers who now asked him to come with them had just shot at him moments before without identifying or announcing themselves.

The Court thus finds that plaintiffs have plausibly pled a false arrest claim. The existence of probable cause for the two alleged crimes was not a "reasonable conclusion to be drawn from the facts known to an arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152.

Deputies Baker and Powers presumably knew that they did not identify themselves, that they crept around to the back of the house under cover of darkness, and that they then shot at Mr. Hanson five times. They further knew that all of these actions ultimately resulted from a noise complaint. Given the facts, the Court finds that they did not have "reasonably trustworthy information . . . sufficient to lead a prudent person to believe that [Mr. Hanson] ha[d] committed or [was] committing an offense." *Romero*, 45 F.3d at 1476 (citing *Jones*, 854 F.2d at 1210). Further, no one told Mr. Hanson which crimes he had been arrested for until well after the fact. When at the jail Corporal Andrew Weber stated that even he did not know why Mr. Hanson was there. Accordingly, the Court finds that Mr. Hanson has pled facts sufficient to establish a constitutional violation.

**B. Whether defendants Powers and Baker are entitled to qualified immunity**

Deputies Powers and Baker also move to dismiss the false arrest claim on qualified immunity grounds. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To avoid application of qualified immunity, a plaintiff must (1) allege facts that make out a violation of a constitutional right, and (2) show that the constitutional right was clearly established at the time it was allegedly violated. *Id.* at 232; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A reviewing court has discretion to address either prong first. *Pearson*, 555 U.S. at 236. In Part IV.A.2 the Court determined that plaintiffs sufficiently pled a constitutional violation. Defendants contend that plaintiffs have failed to demonstrate the right was clearly established because they did not point to a case directly on

12

point. While I agree that is typically required, I disagree that it is required here, particularly at this early stage of litigation.

A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he or she was doing violates that right. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations omitted) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In this circuit a right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). Clearly established law should not be defined at a high level of generality. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

"Although a plaintiff need not identify a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate." *Ali v. Duboise*, 763 F. App'x 645, 650 (10th Cir. 2019) (unpublished) (internal quotations omitted) (citing *Mullenix*, 577 U.S. at 12); *see also White*, 137 S. Ct. at 551. The clearly established standard "requires that the legal principle clearly prohibited the officer's conduct in the particular circumstances before him." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018).

Here, defendants contend that they are entitled to qualified immunity because plaintiffs did not cite a case directly on point. ECF Nos. 40 at 8, 42 at 1. However, plaintiffs imply that a factually similar case is not required when every reasonable officer would have understood that what he is doing violates that right. ECF No. 41 at 8. I agree with plaintiffs.

First, a defendant's assertion of qualified immunity on a motion to dismiss is subject to a

more challenging standard of review than applies on summary judgment. *Thomas*, 765 F.3d at 1194. Second, the Tenth Circuit has repeatedly counseled that "[w]e cannot find qualified immunity whenever we have a new fact pattern." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). In *Anderson v. Blake*, the Tenth Circuit held that "a general constitutional rule . . . can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful." 469 F.3d 910, 914 (10th Cir. 2006). Further, even the Supreme Court has held that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "The *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey*, 509 F.3d at 1284 (internal quotations omitted).

The Court concludes that, based on plaintiffs' factual allegations, every reasonable officer would understand that the actions of Deputies Powers and Baker violated the Fourth Amendment. At the risk of redundancy, the facts here indicate that the officers responded to a noise complaint by sneaking around the back of plaintiffs' home at night and refusing to identify themselves when Mr. Hanson exited his home. Rather than stating they were police officers and announcing the reason for their presence, Deputy Powers immediately shot in Mr. Hanson's direction five times. Rather than admitting their actions were unreasonable at that point, they arrested Mr. Hanson. They did not tell him why he was arrested at that time, but later informed him that he was charged with felony menacing and second-degree assault upon a police officer. No such charges were ever filed. The officers' actions here were out of proportion to the alleged

14

conduct they were investigating, and they placed all members of Mr. Hanson's household as well as themselves in substantial danger. The Court finds that there is no case directly on point to these facts because the officers' actions are so objectively unreasonable that no other officer would have dared to act in such a way. The Court thus finds that neither Deputy Powers nor Deputy Baker are entitled to qualified immunity at this stage of the litigation. Defendants' motion to dismiss the false arrest claim is therefore DENIED as to the individual defendants.

## C. **Whether plaintiffs pled a plausible *Monell* claim against the Board**

Plaintiffs seek to hold the Board liable for its alleged failure to train its law enforcement officers. Defendants argue that plaintiffs' *Monell* claim must be dismissed because (1) no constitutional violation occurred, and (2) plaintiffs have not pointed to an official policy or custom that led to the constitutional deprivation. The Court has already found in Part IV.A.2 that plaintiffs pled a plausible constitutional violation with respect to the false arrest claim. I therefore must determine whether plaintiffs have pointed to an official policy or custom that would render the Board liable. I conclude that they have not.

*City of Canton v. Harris* is the United States Supreme Court case recognizing that a failure to adequately train law enforcement officers can serve as a basis for municipal liability. 489 U.S. 378, 380 (1989). There, the Court held that "the inadequacy of police training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police came into contact." *Id*. at 388. In these types of cases, the question is whether the failure to train represents an official custom or policy attributable to the municipality. *Id*. However, the *Canton* Court was careful to limit when municipal liability on a failure-to-train theory can be asserted. "That a particular officer may be

unsatisfactorily trained will not alone suffice to fasten liability to the city, for the officers' shortcomings may have resulted from factors other than a [failure to train]." *Id*. at 390. Instead, the policy or custom of not training employees must serve as the moving force for the constitutional violation. *Id*. at 379; *see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).

Here, the alleged constitutional deprivation is a violation of Mr. Hanson's Fourth Amendment right to be free from unreasonable seizure when law enforcement officers arrested Mr. Hanson without probable cause. Thus, to meet their burden at the 12(b)(6) stage, plaintiffs must point to an official city policy or custom that caused Mr. Hanson's Fourth Amendment rights to be violated. Plaintiffs have pointed to no such policy or custom. Instead, they simply state in a conclusory manner that the Board failed to train police officers. This is insufficient. Plaintiffs concede the insufficiency of their pleadings but argue the insufficiency results from a lack of discovery. ECF No. 41 at 10. As this Court has reminded plaintiffs on other occasions, "the fact that plaintiffs have not obtained discovery does not alter the pleading obligation." ECF No. 32. The Court thus finds that plaintiffs have not met their burden. Defendants' motion is thus GRANTED as to the false arrest claim against the Board.

**D. Whether the Court has subject matter jurisdiction to hear plaintiffs' state law claims**

Plaintiffs bring numerous state law claims against defendants, including criminal trespass pursuant to C.R.S. §§ 18-4-501 and 18-4-502; reckless endangerment pursuant to C.R.S. § 18-3-208; and false arrest pursuant to C.R.S. § 16-3-102. Defendants argue that the Colorado Governmental Immunity Act ("CGIA") deprives this Court of subject matter jurisdiction. ECF

No. 40 at 13. Plaintiffs argue that this Court can exercise supplemental jurisdiction over their state law claims. ECF No. 41 at 11.

The CGIA "bars actions in tort against public employees and entities, subject to certain provisions waiving immunity." *Sparacio v. Leiker*, No. 18-CV-01371-NYW, 2018 WL 5721801, at *9 (D. Colo. Nov. 1, 2018). "Because [the CGIA] derogates the common law, courts must strictly construe provisions that grant immunity, broadly construe the provisions that waive immunity, and strictly construe exceptions to waivers in favor of compensating victims." *Duke v. Gunnison Cnty. Sheriff's Off.*, 456 P.3d 38, 42 (Colo. App. 2019) (citing *Medina v. State*, 35 P.3d 443, 453 (Colo. 2001)). When alleging state law claims against public employees or entities, the plaintiff bears the burden to prove that the public defendant has waived their right to immunity. *Gray v. Univ. of Colo. Hosp. Auth.*, 284 P.3d 191, 195 (Colo. App. 2012). Nonetheless, courts have acknowledged that "the burden is a relatively lenient one, as there is no presumption of sovereign immunity, and plaintiffs should be afforded the reasonable inferences of their evidence." *Duke*, 456 P.3d at 44 (quoting *Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 85–86 (Colo. 2003)).

### a. State law claims against the Board

Plaintiffs bring only one state law claim against the Board—false arrest in violation of C.R.S. § 16-3-102. The CGIA provides that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort" unless immunity has been waived. C.R.S. § 24-10-106. That statute further outlines seven exceptions where a public entity can be liable in tort. *Id*. False arrest does not appear on the enumerated list. Plaintiffs' state law claim for false arrest against the Board is therefore dismissed.

b. State law claims against individual defendants

The CGIA has a notice requirement for plaintiffs that sue public entities or employees. It states that

> Any person claiming to have suffered an injury by . . . a [public employee] while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury.

§ 24-10-109(1). Furthermore, compliance with this notice requirement is a "jurisdictional prerequisite to any action brought under the provision of this article, and failure of compliance shall forever bar any such action." *Id.*; *see also Maestas v. Lujan*, 351 F.3d 1001, 1013–14 (10th Cir. 2003); *Sparacio*, 2018 WL 5721801 at *9.

Here, plaintiffs have not pled any facts in their complaint to demonstrate their compliance with CGIA's notice requirements. In fact, plaintiffs do not mention the CGIA in their complaint. Further, even when responding to defendants' argument that the CGIA bars plaintiffs' state law claims, plaintiffs again do not mention the CGIA's notice requirements. Due to these pleading deficiencies the Court finds it does not have subject matter jurisdiction to hear plaintiffs' state law claims against the individual defendants. If plaintiffs did not comply with these notice requirements, then the action shall be forever barred per the terms of the statute, and these claims will effectively be dismissed with prejudice. However, if plaintiffs can meritoriously allege compliance with these notice requirements, then the Court will permit plaintiffs to amend their pleadings accordingly. The Court thus dismisses plaintiffs' state law claims against the individual defendants without prejudice.

# **ORDER**

Defendants' motion, ECF No. 40, is GRANTED in part and DENIED in part as follows:

    1. The Court dismisses plaintiffs' Section 1983 excessive force claim against defendant Powers.

    2. The Court dismisses the false arrest state law claim against the Board with prejudice.

    3. The Court dismisses the state law claims against the individual defendants without prejudice.

All that remains in this case are plaintiffs' § 1983 claim alleging false arrest against Deputies Powers and Baker in their individual capacities.

    DATED this 22nd day of June, 2021.

                                              BY THE COURT:

                                              _____
                                              R. Brooke Jackson
                                              United States District Judge